IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TAMARA LUSARDI,                                    CV. 07-889-PK

                    Plaintiff,                     FINDINGS AND
                                                   RECOMMENDATION


v.


MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.
_____

PAPAK, Magistrate Judge:

        Plaintiff Tamara Lusardi challenges the Commissioner's decision denying her application

for disability insurance benefits under Title II of the Social Security Act.  The court has

jurisdiction under 42 U.S.C. § 405(g).  The Commissioner's decision should be affirmed.

## BACKGROUND

        Tamara Lusardi was born in 1962.  (Tr. 65.)  She testified that she attended high school

until mid-year of her senior year, but did not graduate or receive a GED.  *Id.* at 20, 31-32.


Page 1 - FINDINGS AND RECOMMENDATION

Lusardi worked until June 16, 2003, when she was laid off from her job as a bookkeeper due to downsizing. *Id* at. 28, 133. Although her work experience consists primarily of bookkeeping, she holds no special licenses or certificates in that field. *Id.* at 33.

Lusardi filed the present application for disability benefits on January 12, 2004. Lusardi asserted June 16, 2003 as the date she became unable to work due to her condition, *id.* at 91, but received unemployment benefits and continued to look for work until December 1, 2004. *Id.* at 30, 32-33. Lusardi claimed disability due to interstitial cystitis, high blood pressure and irritable bowel syndrome. *Id.* at 133, 145-46.

After the Commissioner of Social Security denied her application initially and upon reconsideration, Lusardi requested a hearing before an administrative law judge (ALJ). *Id.* at 23. The ALJ held a hearing on August 7, 2006 and took testimony from Lusardi, represented by an attorney, and from Patricia Ayerza, a vocational expert. *Id.* at 25-64. On October 25, 2006, the ALJ issued a decision finding Lusardi not disabled because she could work as a cleaner/polisher or inspector. *Id.* at 21.

The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520. *Id.* at 14. At step one, the ALJ found that Lusardi had not engaged in substantial gainful activity since June 16, 2003. *Id.* At step two, the ALJ found Lusardi had the following severe combination of impairments: interstitial cystitis, status post kidney stones, obesity, ovarian cysts and hypertension. *Id.* at 15. Although an examining physician diagnosed Lusardi with a "major depressive disorder, recurrent, moderate" (Tr. 314), the ALJ concluded that she did not have a severe mental impairment. *Id.* at 16. At step three, the ALJ found that Lusardi's impairments, or a combination of those impairments, did not meet or medically equal a

listed impairment. *Id.* The ALJ found that Lusardi was unable to perform any past relevant work at step four, and that she could perform jobs that exist in significant numbers in the national economy at step five. *Id.* at 20. The ALJ therefore found Lusardi not disabled. *Id.* at 21.

The Appeals Council denied review of the ALJ's decision. *Id.* at 4-6. This action made the ALJ's decision the Commissioner's final decision. Lusardi filed this appeal.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If evidence supports more than one rational interpretation, the court must defer to the Commissioner's decision. *Andrews*, 53 F.3d at 1039-40. A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Lusardi contends the ALJ improperly discounted the opinion of her treating physician. Lusardi further asserts that the ALJ erred at step two by finding her depression non-severe and by failing to develop the record concerning her depression. Lusardi also challenges the ALJ's

Page 3 - FINDINGS AND RECOMMENDATION

residual functional capacity (RFC) assessment on the grounds that the ALJ failed to properly consider medical opinions and the testimony of her mother and failed to address any limitations arising from her depression. Finally, Lusardi argues that the ALJ erred at step five because a defective RFC led to the ALJ's finding that she is not disabled.

## I.      Weight Accorded to Treating Physician's Opinion

Lusardi argues that the ALJ failed to credit the opinion of her treating physician, Dr. Zoubek, concerning her functional limitations. Specifically, Lusardi contends that the ALJ improperly rejected Dr. Zoubek's opinion that she would miss three days of work per month and would require two additional fifteen-minute breaks per day. (Pl B. 12-15.) Lusardi also argues that the ALJ failed to consider Dr. Zoubek's opinion concerning her reduced concentration, stamina and pace. *Id.* at 18.

### A.      Legal Standard

An ALJ must give the treating physician's opinion deference because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Brown*, 812 F.2d 1226, 1230 (9th Cir. 1987). "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 168 F.3d 595, 600 (9th Cir. 1999). Rather, a treating physician's opinion receives controlling weight when it is consistent with the other substantial evidence in the case record. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).

If a treating physician's opinion does not receive controlling weight, then several factors determine the weight the ALJ should give to it, including the length of the treatment relationship

Page 4 - FINDINGS AND RECOMMENDATION

and frequency of examination, the amount of evidence that supports the opinion and the consistency of the medical opinion with the record as a whole. *Id.* (citing 20 C.F.R. § 404.1527(d)(2)-(6)).   Thus, "[w]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record." *Id.* (internal citations omitted).   However, if another doctor contradicts a treating doctor's opinion, an ALJ may reject the treating doctor's opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec. Admin.,* No. 06-15291, 2008 U.S. App. LEXIS 12795, at *10-11 (9th Cir. June 18, 2008) (internal citations omitted).

Here, the ALJ gave the opinion of Lusardi's treating physician, Dr. Zoubek, "only limited weight." (Tr. 18.)  The ALJ did not credit Dr. Zoubek's opinion that Lusardi would  require two additional 15-minute breaks per day and miss three days of work per month on average. *Id.* Other physicians do not contradict that opinion.  Rather, Dr. Webster, an examining physician, concluded that Lusardi's pain behavior seemed genuine, but made no findings regarding Lusardi's need for breaks or absences. *Id.* at  308-10.   Thus, the ALJ must provide clear and convincing reasons for discounting Dr. Zoubek's opinion regarding Lusardi's need for breaks and absences.

The ALJ also did not completely credit Dr. Zoubek's opinion that Lusardi had difficulties with stamina and pace and would frequently suffer problems with concentration and attention. The ALJ left this limitation out of the hypothetical posed to the vocational expert and instead limited Lusardi to "simple, routine" work that accommodated several restrictions on her range of movement. *Id.* at  52-55.  Two physicians contradicted Dr. Zoubek's opinion regarding Lusardi's

mental limitations.  Dr. Wood, an examining physician, found that Lusardi suffered minor

problems with immediate recall and abstract reasoning.  *Id.* at  313-14.  A reviewing physician

found only "mild" difficulties with maintaining persistence, concentration or pace.  *Id.* at  325.

Thus, the ALJ need only provide "specific and legitimate reasons" for discounting Dr. Zoubek's

opinion regarding Lusardi's mental limitations.

###    B.    Inconsistencies Between Physician's Opinion and Treatment Notes

Lusardi argues that the ALJ improperly relied on Dr. Zoubek's inability to indicate

Lusardi's sitting and standing limitations as a reason to discount his opinion regarding her

absenteeism and need for breaks.[1] (Pl. B. 13.)  Lusardi also asserts that the ALJ wrongly focused

on Dr. Zoubek's notes stating that Lusardi's symptoms were well-controlled and that she should

seek work.  *Id.* at 13-14.  Finally, Lusardi contends that the ALJ failed to assess whether Dr.

Zoubek's opinion was consistent with the record as a whole.  *Id.* at 14.

The ALJ discussed Dr. Zoubek's opinion and discounted it for the reasons Lusardi now

criticizes.  The ALJ indicated it was "hard to fathom" how Dr. Zoubek could offer a reliable

opinion on Lusardi's need for breaks and absenteeism when he could not assess her ability to sit,

stand and walk.  (Tr. 18.)  The ALJ also noted that Dr. Zoubek's "treatment records consistently

report that the claimant's condition is stable and 'well-controlled' and that "there is no mention in

the record of persistent, debilitating pain, nor inordinate need to use the restroom, at times

---

[1] Lusardi also suggests that the ALJ should have submitted interrogatories to Dr. Zoubek regarding his inability to provide specific sitting and standing limitations.  (Pl. B. 13.)  "An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination."  *Bayliss,* 427 F.3d at 1217.  Here, the ALJ had no duty to recontact Dr. Zoubek because the record provided sufficient information for the ALJ's determination, as discussed below.

Page 6 - FINDINGS AND RECOMMENDATION

material hereto." *Id.* Finally, the ALJ noted that Dr. Zoubek told Lusardi to seek work through the unemployment office. *Id.*

The medical record supports the ALJ's findings. Dr. Zoubek's opinion on her limitations, presented in the form of a questionnaire completed in June 2004, indicated he did not know how far she could walk or how long she could sit or stand at one time. *Id.* at 333. Approximately six months before her reported June 16, 2003 onset date, and several times thereafter, Dr. Zoubek's notes on Lusardi's office visits indicated that her symptoms were "well controlled." (Tr. 377, 379, 381.)[2] Almost one year after her reported onset date, in May 26, 2004, Dr. Zoubek encouraged Lusardi to continue to seek work through the unemployment office. *Id.* at 381. When Lusardi sought treatment for a kidney stone in May 2005, Dr. Zoubek noted that "there has not been any change in her bladder symptoms" and that her interstitial cystitis "has been stable." *Id.* at 465. Moreover, the record of Lusardi's August 2005 emergency room visit for a toothache indicates her abdomen was "non-tender." *Id.* at 354-55.

A discrepancy between a doctor's opinion and treatment notes "is a clear and convincing reason for not relying on the doctor's opinion." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting doctor's opinion that contradicted the doctor's notes, and the doctor's other recorded observations and opinions regarding the claimant's capabilities); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (rejecting treating doctor's opinion on claimant's limitations where treatment notes did not indicate reasons for limitations nor did they indicate that the

---

[2] A review of the record before the June onset date also demonstrates that Lusardi's symptoms were generally under control. Her office visits in 2001 and 2002 include descriptions of her symptoms as "stable" (Tr. 373, 375) and "well controlled" (Tr. 374) with the exception of one visit, in October 2002, when Lusardi reported increased pain due to stress from her uncle's illness. (Tr. 376).

doctor ever recommended such limitations); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (rejecting treating doctor's statement that claimant unable to work where doctor indicated in treatment notes that claimant could work).  Thus, the ALJ properly cited discrepancies with the treatment record as a clear and convincing reason to give Dr. Loubek's opinion limited weight.

Although Lusardi contends otherwise (Pl. B. 14), the  ALJ did not look at Lusardi's symptoms and abilities at isolated periods.  Rather, the ALJ looked to the record as a whole.  In addition to treatment notes stating that Lusardi's condition was stable and that she could work, the record also indicated that Lusardi worked full time for many years despite her condition (Tr. 138-39) and that Dr. Zoubek indicated that the condition did not deteriorate over time (Tr. 335). The ALJ properly took these facts into account.  (Tr. 18, 19.)  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (ALJ properly considered claimant's previous ability to hold job while suffering from same condition underlying his claim for disability benefits).

### C.    Frequency of Treatment

Lusardi argues that the ALJ improperly relied on the frequency of her visits to Dr. Zoubek as a reason to discount his opinion. (Pl. B. 14-15.) The ALJ concluded that Dr. Zoubek's decision to see Lusardi only twice per year at the time he authored his report was "hardly consistent with debilitating symptoms." (Tr. 18.)  Lusardi asserts that she was unable to afford visits after she lost her job and further treatment was not available.

The record  demonstrates that Lusardi's visits to Dr. Zoubek decreased after her reported June 1, 2003 onset date.  Lusardi saw Dr. Zoubek approximately every three months from

October 17, 2001 until January 28, 2003. *Id.* at 373-78. Lusardi lost her job in June 2003. *Id.* at 28. She next visited Dr. Zoubek on July 2, 2003, five months after her last appointment, and then over 10 months later, on May 26, 2004. *Id.* at 379-81. Dr. Zoubek completed his report on her limitations in June 2004. *Id.* at 330. Lusardi last saw Dr. Zoubek in May 2005, when he treated her for kidney stones. *Id.* at 39, 399.

An ALJ can consider the frequency of examination as a factor in determining the weight to accord to a physician's opinion. 20 C.F.R. § 404.1527(d)(2)(ii). More importantly, while an ALJ cannot deny disability benefits because of a claimant's failure to obtain treatment due to lack of funds, an ALJ can consider an unexplained, or inadequately explained, failure to seek treatment in assessing the severity of a claimant's symptoms. *See Orn*, 495 F.3d at 638; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Here, while the record demonstrates that Lusardi saw Dr. Zoubek less often after she lost her job, it is not clear whether her finances or her symptoms were the cause. At the hearing, Lusardi testified that she saw Dr. Zoubek until May 2005, almost two years after she lost her job, but stopped then because she did not have an income or health insurance. (Tr. 39.) Lusardi continued on her medications until her hearing date, *id.* at 387, but told Dr. Zoubek they were expensive. *Id.* at 379. In addition, she obtained treatment for kidney stones and a toothache despite her lack of insurance. *Id.* at 339, 350. Dr. Zoubek indicated that the frequency of Lusardi's visits varied according to her symptoms. *Id.* at 330.

This Court defers to the ALJ's rational interpretation of the evidence. *Andrews*, 53 F.3d at 1039-40; *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1999) ("The ALJ is responsible for resolving ambiguities in the evidence.") The evidence sufficiently supported the

ALJ's decision to rely on frequency of treatment to discount Dr. Zoubek's opinion.[3]

The ALJ's decision to give Dr. Zoubek's opinion limited weight should be affirmed.

## II.    Severity Determination

Lusardi asserts that the ALJ erred at step two because he improperly relied on an absence of  mental health treatment records to "dismiss" her depression as a source of impairment. (Pl. B. 15.)  Lusardi further asserts that the ALJ neglected his duty to develop the record concerning her mental impairment. *Id.* at 16-17.

### A.    Absence of Significant Mental Health Treatment

At step two, an ALJ must determine whether the claimant has any combination of impairments that significantly limit her ability to do basic work activities.  20 C.F.R. § 404.1520(c). An ALJ can find an impairment "'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations omitted).

Here, the ALJ found that Lusardi's depression was not a severe impairment, based in part on the lack of a "record of significant specialized psychiatric care at any material time hereto." (Tr. 15.)  The ALJ, however, recognized that Lusardi had taken Xanax for anxiety. *Id.*  In addition, the ALJ noted that Lusardi had been diagnosed with a "major depressive disorder,

---

[3] Moreover, even if the ALJ committed error by relying on the frequency of Lusardi's medical visits, such an error would be harmless because the ALJ provided other clear and convincing reasons to give Dr. Zoubek's opinion limited weight.  See *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (ALJ's reliance on reasons unsupported by the record constituted harmless error where ALJ provided other record-supported reasons for discrediting testimony).  In addition to the reasons Lusardi challenges here, the ALJ also discounted Dr. Zoubek's opinions to the extent he relied on Lusardi's subjective complaints, which the ALJ found to be "not entirely credible." (Tr.  16, 19.)  Lusardi does not contest the ALJ's credibility finding.

recurrent, moderate." He also recognized, however, that "a state agency evaluating psychological consultant concluded that the claimant's psychological symptoms were "nonsevere." *Id.*

The record supports the ALJ's findings regarding Lusardi's psychiatric care. A state psychological consultant reviewed Lusardi's file and noted that she had received no significant mental health treatment in the past. (Tr. 329.) She experienced depression in 1997 and 1998, which her doctor then characterized as "mild" and treated with "a small dose of antidepressant." *Id.* at 256-57. After her aunt died unexpectedly in August 2003, an urgent care clinic gave her a prescription for a three-week supply of Xanax with no refills. *Id.* at 295-97, 416. Lusardi also had a prescription for Valium. *Id.* at 35, 303, 375, 383-84.

The ALJ also properly characterized Lusardi's diagnosis. In March 2004, Dr. Wood conducted a mental status examination and diagnosed Lusardi as suffering from "Major Depressive Disorder Recurrent Moderate," but found she did not have any severe memory issues and did not indicate any other functional limitations. *Id.* at 311-14. Although Lusardi reported a high level of depression, Dr. Wood concluded, "Her rating of her depression seems somewhat overstated based on her functional level. Some of this seems to be complicated by issues of grief related to [recent deaths in her family] and also her mother's eye surgery." *Id.* at . 314. The state psychological consultant who reviewed Lusardi's medical records concluded that she had an affective disorder but that it was not severe and caused only mild limitations in maintaining social functioning, concentration, persistence or pace. *Id.* at 315, 325, 329. The consultant's report included a brief narrative setting forth the basis for that opinion. *Id.* at 329. Finally, Dr. Zoubek's report included anxiety and depression among Lusardi's symptoms, but indicated she could perform "low-stress" jobs. *Id.* at 330, 332.

Page 11 - FINDINGS AND RECOMMENDATION

The weight an ALJ affords non-examining physician's opinion "depends on the degree to which they provide supporting explanations for their opinions." *Ryan*, 2008 U.S. App. LEXIS 12795, at *20 (quoting 20 C.F.R. § 404.157(d)(3)).  In addition, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (accepting opinion of non-treating, non-examining physician over treating physician where it was corroborated by other non-treating physicians' opinions, which were based on independent clinical findings).

Here, the ALJ properly relied on the medical record to support his conclusion that Lusardi's depression was not a severe impairment.  The ALJ did not rely on a lack of treatment in reaching that conclusion, but rather looked at the nature of the treatment Lusardi did in fact receive.  In addition, the ALJ looked to a non-examining physician report that set forth reasons supporting a conclusion that Lusardi had only "mild" limitations.  Moreover, as in *Saelee*, the non-examining physician's conclusion was corroborated by an examining physician's report, which in turn was based on clinical findings from a mental status examination.  Therefore, substantial evidence supports the ALJ's finding that Lusardi's depression was not a severe psychiatric impairment.[4]

---

[4]Moreover, if an ALJ resolves step two in the claimant's favor, an ALJ's erroneous finding that an impairment is non-severe constitutes harmless error if the ALJ properly considers limitations imposed by the impairment at other steps of the sequential process. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). The ALJ resolved step two in Lusardi's favor, finding she had the following combination of severe impairments: interstitial cystitis, status post kidney stones, obesity, ovarian cysts and hypertension.  (Tr. 15.)  Thus, in the sections that follow, the Court inquires whether the ALJ properly considered her mental limitations in his RFC determination and appropriately addressed them in the hypothetical he posed to the vocational expert.

**C.      ALJ Duty to Develop the Record**

Lusardi contends that the ALJ violated his duty to develop the record concerning her mental impairment.  (Pl. B. 16-17.)  She argues that the ALJ should have questioned her physicians about the impact of her depression and requested that Dr. Wood complete a mental RFC questionnaire.  *Id.*

The claimant bears the burden of proof to establish disability.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir 2001).  The ALJ, however, "has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  *Smolen*, 80 F.3d at 1288 (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  This duty exists even when the claimant is represented by counsel, *id.,* yet it arises "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes*, 276 F.3d at 459-60.  Thus, courts in this district have repeatedly held that an ALJ does not have a duty to request information regarding the claimant's residual functional limitations where the medical evidence suffices to support a disability determination.  *Davis v. Massanari*, No. 00-6211, 2001 U.S. Dist. LEXIS 12516, at *12-13 (D. Or. Aug. 15, 2001); *Purvis v. Commissioner of the SSA*, 57 F. Supp. 2d 1088, 1092 (D. Or. 1999); *Loftis v. Shalala*, No. 94-6065, 1994 U.S. Dist. LEXIS 15858 at *9-10 (D. Or. Oct. 24, 1994).

Here, the ALJ did not have a duty to develop the record further.  As discussed in detail above, substantial evidence in the record supports the ALJ's finding that Lusardi's depression did not constitute a  severe impairment. That evidence consisted of her medical history in addition to consistent, unambiguous reports from an examining physician and a non-examining physician. Therefore, the ALJ's decision that Lusardi's depression was not a severe impairment is supported

by substantial evidence in the record and should be affirmed.

### III.    Residual Functional Capacity Determination

Lusardi contends that the ALJ erred in determining her residual functional capacity.  The RFC assessment describes the work-related activities a claimant can still do on a sustained, regular and continuing basis, despite the functional limitations imposed by her impairments.  20 C.F.R. § 404.1545(a), (e); SSR 96-8p, 1996 WL 374184.  Lusardi argues that the ALJ's RFC assessment improperly discounted portions of medical opinions and failed to consider others. (Pl.B. 18-19.) She also argues that the ALJ did not consider any limitations due to her depression.  *Id.* at 19.  Finally, Lusardi asserts that ALJ did not provide specific and legitimate reasons to reject the limitations identified by her mother.  *Id.*

#### A.    Limitations Identified by Dr. Zoubek

Lusardi asserts that the ALJ improperly rejected Dr. Zoubek's opinion concerning her need for additional breaks and absences and failed to consider his opinion concerning her reduced concentration, stamina and pace.[5] (Pl. B. 18.)  Lusardi also argues that, because the ALJ accepted some of the limitations identified by Dr. Zoubek and not others, he engaged in "cherry picking" the evidence.  *Id.*

The ALJ need not take into account medical opinions that were permissibly discounted, *Batson*, 359 F.3d at 1197, and may decide to adopt one portion of a medical opinion and not

---

[5] Lusardi also asserts that the ALJ failed to consider Dr. Zoubek's opinion that Lusardi would have "good and bad days."  By inference, the ALJ's decision to discount Dr. Zoubek's opinion as a whole, and his opinion on absences in particular, also addressed this purported limitation.

another because "[a] physician's report "may actually comprise separate medical opinions regarding diverse physical and mental functions." SSR 96-5p, 1996 WL 347183, at * 4.   This court explained above that the ALJ provided clear and convincing reasons for discounting Dr. Zoubek's opinion's regarding Lusardi's need for breaks and absences and her difficulty with concentration, stamina and pace.  Thus, the ALJ did not err when he did not incorporate all of Dr. Zoubek's opinions in his RFC determination.

### B.      Limitations Identified by Dr. Webster

Lusardi contends the ALJ failed to address the limitations identified in Dr. Webster's report.  (Pl. B. 19.)  Specifically, she claims the report indicates that she has difficulty sitting for greater than 5 to 10 minutes.  *Id.*  The ALJ did not discuss Dr. Webster's  report, but concluded Lusardi could work "six hours, subject to a sit/stand option every 30 minutes." (Tr. 16.)

The record supports the ALJ's RFC determination.  Dr. Webster's report indicated he had "no objective findings" that Lusardi experienced difficulty with sitting, but noted that if she had interstitial cystitis "to the degree to that she reports . . . [i]t sounds like she has difficulty sitting for greater than 5 to 10 minutes."  *Id.* at  310.  At the hearing, Lusardi testified that she could sit for 30 minutes and stand for 15-30 minutes.  *Id.* at  47.

The ALJ must reach the RFC assessment based on all the evidence in the case record  . . . and must consider all of an individual's impairments, including those that are not severe.  SSR 96-8p, 1996 WL 374184 at *5.   The ALJ, however, "does not need to discuss every piece of evidence" in the RFC determination.  *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal citations omitted) (upholding ALJ opinion that did not address reviewing physician report because the report was based on evidence the ALJ did discuss).  Rather, the ALJ "must

explain why 'significant probative evidence' has been rejected," *Vincent v. Heckler*, 739 F.2d

1393, 1395 (9th Cir. 1984) (internal citations omitted) (upholding ALJ's opinion that did not

mention a reviewing physician's opinion because it contradicted examining physician's reports,

which ALJ did discuss).

The ALJ properly did not address the limitation suggested by Dr. Webster's report.

Lusardi's hearing testimony regarding her ability to sit contradicted her earlier statement to Dr.

Webster.  The ALJ did discuss and discount the credibility of her symptoms testimony.  (Tr. 19.)

Thus, the ALJ did not need to address Lusardi's earlier account of her symptoms to Dr. Webster

because, in light of her testimony at the hearing, that evidence was neither significant nor

probative with regard to her sitting limitations. *See Howard*, 341 F.3d at 1012; *Vincent*, 739 F.2d

at 1395.

C.    **Limitations From Depression**

Lusardi argues that the ALJ failed to address the limitations caused by her depression.

(Pl. B. 19.)  The ALJ explained that he that he accepted Lusardi's allegations, "only to the extent

they were reasonably supported by the objective medical evidence" (Tr. 16) because her

statements "concerning the intensity, persistence and limiting effects" of her symptoms were

"not entirely credible." *Id.* at 19.  He further explained that he limited Lusardi to "simple,

routine work, not because of an underlying psychiatric impairment," but because of her pain

symptoms and medications. *Id.*

The record demonstrates that Lusardi had minor mental limitations. Her mental status

exam revealed that she had slight problems with immediate recall and abstract reasoning.  *Id.* at

313.  The examiner concluded, "[h]er rating of her depression seems somewhat overstated based

on her functional level," and noted, "[t]he memory issue she describes might be related to depression." *Id.* at 314.  The reviewing physician, who completed a Psychiatric Review Technique Form, described her mental status exam was "unremarkable" except for slight problems with memory and abstract reasoning. *Id.* at 329.  He concluded that Lusardi experienced only mild limitations in maintaining social functioning, concentration, persistence or pace. *Id.* at 329.  Finally, Dr. Webster, who conducted a physical examination, noted that Lusardi "seemed to be a little bit confused at times," but indicated that he thought it was "due to all the pain medications she is on." *Id.* at 309-10.

The ALJ properly addressed Lusardi's mental limitations.  At step two, the ALJ discussed and accepted physicians' findings regarding the severity of Lusardi's depression.  In the RFC analysis, the ALJ ascribed Lusardi's mental limitations to her pain, a finding supported by the two examining physicians' reports, which indicated her symptoms were only possibly related to depression.  More importantly, the ALJ properly accounted for Lusardi's mental difficulties by limiting her to "simple, routine" work.  An ALJ's decision to limit a claimant to "simple, routine" work, "adequately captures" deficiencies in concentration, persistence or pace when it reflects the claimant's actual limitations. *See Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997) (holding that limitation to "simple routine repetitive work, which does not require close attention to detail" and at a "regular pace" captured deficiencies of concentration, persistence or pace) *see also Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (suggesting that limitation to "simple one-two-three jobs" could sufficiently capture problems with concentration); *Davis v. Massanari*, 2001 U.S. Dist. LEXIS 12516, at *23-26 (holding words used in the Psychiatric Review Technique Form need not be used in the vocational hypothetical as long as the question

Page 17 - FINDINGS AND RECOMMENDATION

captures the limitations findings from the form).

Here, the objective medical evidence demonstrates that Lusardi suffered from mild problems with immediate recall and abstract reasoning.  As noted above, the ALJ properly rejected Dr. Zoubek's opinion that Lusardi had "frequent" problems with concentration.  Thus, the ALJ's decision to limit Lusardi to "simple routine" work appropriately captured the extent of her mental limitations.

### 4.        Lay Witness Testimony

Lusardi argues that the ALJ failed to address the limitations identified by her mother, Margaret Green, and failed to provide legitimate reasons for rejecting her testimony.  (Pl. B. 19.) The ALJ addressed Ms. Green's report but rejected it for two reasons.  First, Green's report of Lusardi's activities did not confirm Lusardi's testimony regarding the severity of her symptoms. (Tr. 19.)  Second, the ALJ explained that the limitations that Ms. Green did recognize had little support in the medical record.  *Id.* at 19-20.

The record, including Ms. Green's initial statement and the report she prepared for Lusardi's administrative appeal, demonstrates that Green's account conflicted with Lusardi's description of her symptoms as extreme.[6]  Although Green indicated that Lusardi was in "pain all the time," she also said Lusardi spoke on the phone every day and did light housework for one hour, two to three times per week.  *Id.* at 152, 154. She also reported that Lusardi drove herself weekly to pick up prescriptions, *id.* at 153, and at least two times a month to get groceries.  *Id.* at

_____

[6] A court may consider materials the Appeals Council addressed in the context of denying a claimant's request for review.  *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000). This Court accordingly reviewed Green's initial report, which she completed in January 2004 (Tr. 150), as well as her supplemental report, completed in August 2006 and included in Lusardi's request for review by the Appeals Council  (Tr. 624).

Page 18 - FINDINGS AND RECOMMENDATION

153, 625.  Green's account also conflicts with Lusardi's own report of her activities, in which

Lusardi stated that she went shopping monthly and had another person drive her.  *Id.* at 160.

Green's report also did not confirm Lusardi's claim that she needed to use the bathroom 45 times

per day, but instead indicated that Lusardi need to be near a restroom at all times.  *Id.* at 625.

Moreover, the limitations identified by Green had little support in the medical record.

Although Ms. Green reported that Lusardi had problems with concentration for longer than 10 to

15 minutes, *id.* at 155, 626, and suffered from anxiety attacks, *id.* at. 629, "melt downs," *id.* at

627, and mood swings, *id.* at 630, other evidence conflicted with this testimony.  Green indicated

that Lusardi handled her own finances, *id.* at 153, finished what she started,  *id.* at 155, could

follow written instructions,  *id.* at 155 and spoke on the phone daily.  *Id.* at 154.  More

importantly, as noted above, the medical evidence revealed that her mental status exam was

"unremarkable" except for slight problems with memory and abstract reasoning and indicated

only mild limitations in maintaining social functioning, concentration, persistence or pace.  *Id.* at

329.

If the ALJ wishes to discount lay witness testimony, he or she must give reasons that are

germane to the witness.  *Stout*, 454 F.3d at 1053.  The ALJ can consider whether the lay witness

testimony conflicts with the record of the claimant's activity. *Bayliss*, 427 F.3d at 1218, *see also*

*Magallanes*, 881 F.2d at 756 (holding that ALJ can consider claimant's level of activity in

assessing credibility of subjective pain testimony). In addition, the ALJ can reject lay witness

testimony to the extent that it conflicts with the medical record and other testimony. *Lewis v.*

*Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Here, the ALJ properly discounted Green's report because it conflicted with Lusardi's

claims regarding her symptoms and with the medical record as a whole. The record supports that finding and this Court therefore declines to disturb it.

The ALJ's decision regarding Lusardi's residual functional capacity is supported by substantial evidence in the record and should be affirmed.

**D.    Vocational Expert Testimony**

Lusardi argues that the ALJ improperly relied on vocational expert testimony premised on a hypothetical question that did not include all of her functional limitations. The ALJ relied on the testimony of a vocational expert to conclude that a person with Lusardi's limitations could perform work as a cleaner, polisher or inspector and that 900 such jobs were available regionally and more than 65,000 were available nationally. (Tr. 21.)

In step five, the Commissioner must show that the claimant can do other work that exists in the national economy. *Andrews*, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Id.; Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). The hypothetical posed to a vocational expert must only include those limitations supported by substantial evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). "Conversely, an ALJ is not free to disregard properly supported limitations." *Id.*

For the reasons set forth above, the ALJ's decision to reject certain restrictions are reasonable and are supported by the record. Moreover, the restrictions the ALJ did include adequately describe Lusardi's functional limitations. Accordingly, the ALJ was entitled to rely on the VE's testimony to reach the conclusion that Lusardi's limitations would not preclude work as a cleaner, polisher or inspector.

**CONCLUSION**

Based on the foregoing, the ALJ applied correct legal standards in reaching his decision that Lusardi is not entitled to disability insurance benefits under Title II of the Social Security Act and substantial evidence in the record supports that decision. The Commissioner's decision should be affirmed.

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due July 11, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation(s) will be referred to a district court judge and go under advisement.

Dated this 26th day of June, 2008.

 /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

Page 21 - FINDINGS AND RECOMMENDATION